UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

LISA BYER, an individual,

      Plaintiff,

vs.

CRYO-CELL INTERNATIONAL, INC.,
a Delaware Corporation,

      Defendant.
_____/

## COMPLAINT

1.      Plaintiff, LISA BYER (hereinafter referred to as "Plaintiff" and "BYER"), was an employee of Defendant, CRYO-CELL INTERNATIONAL, INC., a Florida Corporation, and brings this action for disability/handicap discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553 (the "ADAAA"), and the Florida Civil Rights Act, F.S. §760.01 *et seq.*, as well as for alleged interference and retaliation violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601 *et seq.*

2.      BYER is an individual residing in Flagler County, Florida, within the jurisdiction of this Court.

3.      Defendant, CRYO-CELL INTERNATIONAL, INC., a Delaware Corporation, has at all times material to this Complaint owned and managed a stem cell cryopreservation service business that, *inter alia*, handles the preservation and storage of human umbilical cord blood and cord tissue including through operations across Florida and an office located at 700 Brooker Creek

Boulevard, Suite 1800, Oldsmar, Florida 34677 in Pinellas County, Florida, within the jurisdiction of this Court.

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §1331, §1332, §1337 and §1367, 42 U.S.C. §12101 *et seq*., and 29 U.S.C. §2601 *et seq.*

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all of the events, or a substantial part of the events, giving rise to this action, occurred in Pinellas County, Florida, within the jurisdiction of the United States District Court for the Middle District of Florida, Tampa Division.

6.      In February 2015, BYER began working for CRYO-CELL INTERNATIONAL, INC. after Defendant recruited BYER for a Sales Training position.

7.      After approximately one year, CRYO-CELL INTERNATIONAL, INC. moved BYER into a sales position as well because Defendant reportedly no longer needed solely a Sales Trainer.

8.      Between approximately 2016 and 2021, BYER satisfactorily performed her duties as a Client Coordinator & Sales Trainer for CRYO-CELL INTERNATIONAL, INC., with Plaintiff's primary duties which consisted of: contacting and educating parents on the options of cord blood and tissue banking to ensure they can make educated choices; analyzing the processes, workflows, and providing detailed analysis on departmental process improvements; train and retraining all sales team members as software changes occurred; and maintaining training materials to fit with changes in CRYO-CELL INTERNATIONAL, INC.'s business processes & software changes.

9.     Notably, when BYER performed training duties for CRYO-CELL INTERNATIONAL, INC., Defendant paid BYER for sales made while with the trainee as well as a salary plus commissions based on the number of sales made each month.

10.     At all times material to this action, BYER was a covered employee of Defendant, CRYO-CELL INTERNATIONAL, INC., within the meaning of the ADAAA, 42 U.S.C. §12111(4), the FCRA, F.S. §760.10(1)(a), and the FMLA, 29 U.S.C. §2611(2).

11.     At all times material to this action, Defendant, CRYO-CELL INTERNATIONAL, INC., had Fifty (50) or more employees for each working day in each of twenty (20) or more calendar weeks in the calendar year(s) 2020 and/or 2021.

12.     At all times material to this action, Defendant, CRYO-CELL INTERNATIONAL, INC., was BYER's employer within the meaning of the ADAAA, 42 U.S.C. §12111(5), the FCRA, F.S. §760.02(7), and the FMLA, 29 U.S.C. §2611(4).

13.     In approximately January 2018, BYER first sought Family and Medical Leave Act (FMLA) leave from CRYO-CELL INTERNATIONAL, INC. because Plaintiff's husband, Clynton Byer, needed a heart transplant and he was in the transplant program at Mayo Clinic.

14.     Throughout BYER's employment with CRYO-CELL INTERNATIONAL, INC. between approximately May 2020 and June 2021 while BYER worked as a remote employee for Defendant, BYER received ongoing medical treatment for (a) serious neck/back injuries and neurological problems—after Plaintiff had previously fallen  down the stairs and hit her head approximately seven (7) times; and (b) anemia, of which medical condition(s) Defendant had knowledge as a result direct communications between BYER and Defendant's management personnel about Plaintiff's injuries, symptoms, and medical problems including but not necessarily limited to BYER's immediate supervisor, Oscar Vergara, CRYO-CELL INTERNATIONAL,

INC.'s Associate Director of Global Sales, as well as: (i) Melissa Warrene, CRYO-CELL INTERNATIONAL, INC.'s Manager; (ii) Belinda Perry, CRYO-CELL's Human Resources Manager; and (iii) Mark Portnoy, CRYO-CELL's Chief Executive Officer (CEO).

15.     At all times material to this action between approximately May 2020 and June 2021, BYER was an individual with one or more neurological conditions and hemic disorder, namely: (a)  cervical problems as a result of serious neck/back injuries; and (b) anemia, a blood disorder that caused BYER to lack enough healthy red blood cells to carry adequate oxygen to her body's tissues.

16.     At all times material to this action between approximately May 2020 and June 2021, BYER suffered from one or more "physical impairments" within the meaning of the ADA, 29 C.F.R. §1630.2(h)(1), as a result of BYER's neurological conditions, hemic disorder, and resulting medical issues, including but not limited to, Plaintiff suffering from one or more physiological disorders or conditions affecting one or more of BYER's major bodily functions, including but not limited to Plaintiff's musculoskeletal functions as well as Plaintiff's hemic functions.

17.     During the calendar year 2020, CRYO-CELL INTERNATIONAL, INC. paid BYER gross wages of $56,678.65 between salary and commissions.

18.     On or around April 28, 2021, BYER had a doctor's appointment with a spinal surgeon at the Mayo Clinic in Jacksonville, Florida who specialized in complex spinal surgery (including surgery for, *inter alia*, spinal trauma and degenerative spinal disorders), and BYER also underwent an updated MRI for Plaintiff's neck/back injuries as part of surgical planning for BYER's cervical problems.

19.     During BYER's April 28, 2021 appointment at the Mayo Clinic, it was recommended that BYER undergo a potentially dangerous but necessary cervical surgery to address Plaintiff's deteriorating health condition as a result of her neck/back injuries and neurological conditions.

20.     Following BYER's April 2021 appointment at the Mayo Clinic and MRI, in late April 2021/early May 2021, BYER and Oscar Vergara reviewed BYER'S MRI results online together and BYER expressly discussed with Mr. Vergara that her doctor had informed Plaintiff that she would need to be out of work on medical leave for as long as three (3) months following surgery for her neck/back injuries.

21.     Significantly, Mr. Vergara told BYER in late April 2021/early May 2021 that he did not like how long BYER would need to be out of work on medical leave from CRYO-CELL INTERNATIONAL, INC. after surgery and Mr. Vergara advised BYER to not only get a second opinion but also to talk to Melissa Warrene—who was a nurse—to talk to Ms. Warrene about Plaintiff's symptoms and how badly she was feeling.

22.     In or around early May 2021, BYER discussed with Melissa Warrene Plaintiff's medical conditions and cervical surgery, in response to which Ms. Warrene said, *inter alia*, that she believed three (3) months recovery time was "too long" if BYER underwent cervical surgery.

23.     Similarly in or around early May 2021, BYER also notified Belinda Perry that Plaintiff was starting to lose feeling in her fingers and that after further evaluation by Plaintiff's doctor, BYER  needed to undergo cervical surgery.

24.     However, BYER  initially  received  no  response  from  CRYO-CELL INTERNATIONAL, INC. in May 2021 about Plaintiff's need for medical leave for cervical

surgery, so BYER followed up again to Belinda Perry, who responded and informed BYER to simply notify the company when Plaintiff received the specific date of her cervical surgery.

25.     During the calendar year 2021, CRYO-CELL INTERNATIONAL, INC. paid BYER total gross wages of $35,077.53 which included, *inter alia*, salaried wages of approximately $11,888.46 and approximately $21,784.06 in commissions.

26.     Between approximately May 2020 and June 2021, BYER successfully carried out her essential job duties for CRYO-CELL INTERNATIONAL, INC.

27.     In early June 2021, BYER informed Mr. Vergara over the telephone on June 2, 2021 about the specific dates BYER received from her doctors for Plaintiff's uterine ablation procedure and her cervical surgery and the time off BYER needed for medical leave from her employment with CRYO-CELL INTERNATIONAL, INC. for Plaintiff's serious health conditions.

28.     More specifically, on June 2, 2021, BYER told Oscar Vergara that Plaintiff was going to have two (2) separate surgical procedures:  (i) a uterine fibroid ablation procedure on July 16, 2021 to get BYER's anemia under control due to a large fibroid, for which BYER needed only Friday off work for that surgery; and (ii) cervical surgery that would likely take place on July 29, 2021.

29.     Later in the day on June 2, 2021—which was a scheduled day off for BYER's daughter's high school graduation—BYER received multiple telephone calls from Oscar Vergara and Braulio Cardenas, who was a Client Coordinator/Sales Trainer, notifying BYER that she would be given permission by CRYO-CELL INTERNATIONAL, INC. to miss work on Friday, July 16, 2021 for her scheduled ablation procedure but that BYER would be required to work on

Saturday, July 17th and Sunday, July 18th to cover calls or find another employee who would exchange working that weekend with BYER.

30.     During a call with Braulio Cardenas on June 2, 2021, BYER discussed with Mr. Cardenas—who was responsible for doing staffing calendars for CRYO-CELL INTERNATIONAL, INC. and was the individual who inserted the July 16, 2021 and July 29, 2021 planned dates for BYER's two (2) surgeries in Defendant's computer system—that BYER was: (a) not merely taking days off but rather was having an intimate medical procedure on July 16th in advance of BYER undergoing a serious cervical surgery on July 29th; and (b) BYER no longer had feeling in her left hand and could not postpone having cervical surgery to train anyone else for CRYO-CELL INTERNATIONAL, INC.

31.     On or around June 8, 2021, BYER e-mailed CRYO-CELL INTERNATIONAL, INC. about Plaintiff's cervical surgery and need for substantial medical leave following that surgery, which e-mail was sent to the best of BYER's recollection to Melissa Warrene, Belinda Perry, and Oscar Vergara.

32.     On June 9, 2021, BYER received a call from Belinda Perry and Oscar Vergara notifying Plaintiff that CRYO-CELL INTERNATIONAL, INC. was terminating BYER's employment purportedly because Defendant received a complaint from a client.

33.     The reasons proffered by CRYO-CELL INTERNATIONAL, INC. in June 2021 for terminating BYER's employment were false and known to be false by Defendant at the time of Plaintiff's termination and instead were a pretext for unlawful disparate treatment and disability/handicap discrimination and retaliation against BYER in violation of the ADA, FCRA, and FMLA.

34.     Despite the reason(s) proffered by CRYO-CELL INTERNATIONAL, INC. in June 2021 for terminating BYER's employment, it was a common (if not daily) practice at CRYO-CELL INTERNATIONAL, INC. between 2020 and 2021 for BYER and other employees to call Defendant's competitors and for competitors to likewise call Defendant to shop one another, as part of which calls made to Defendant's competitors were frequently recorded pursuant to the express direction of Oscar Vergara and Defendant's management to employees—including but not limited to BYER and other Client Coordinators such as Amarilys Gonzalez and Juan Filpo—to record these calls.   In this regard,  Mr. Vergara regularly told BYER and other CRYO-CELL employees to lie during phone calls and pretend to be pregnant mothers.  However, while BYER was uncomfortable with Mr. Vergara's directives, BYER would tell clients/prospective clients during calls that Plaintiff was "asking for a friend" or that she was calling "for a family friend" to verify a special.

35.     Moreover, BYER was expressly instructed in June 2021 by CRYO-CELL INTERNATIONAL, INC.'s CEO, Mark Portnoy, to: (i) call Defendant's competition, Viacord; and (ii) prove to a client that a coupon of Viacord that had been sent to Defendant by the client did not mean what the client thought/understood despite what was written on the Viacord coupon.

36.     Significantly, based upon BYER's work experience, companies in the stem cell cryopreservation industry frequently created sales with deceptive coupon language that was often very confusing to clients, such that while CRYO-CELL INTERNATIONAL, INC. claimed to honor the prices of certain competitors such as CBR and Viacord, in June 2021, Mark Portnoy did not want to honor the Viacord coupon sent by the client to BYER.

37.     Rather, Mark Portnoy told BYER in June 2021 that he was "happy to take a loss" in order to take a client from Viacord, and Mr. Portnoy thought the coupon at issue *did not* include

the first year of storage even though the client claimed she was told by Viacord that it did include such storage.  Notably, there was nothing but the client's word to prove otherwise because the Viacord coupon was a coupon which the client had obtained when she attended an event, such that it could not be verified on Viacord's website or anywhere else.

38.     Because Oscar Vergara was out of town in June 2021 at the time the issues with the foregoing client arose, BYER told Mark Portnoy directly that Plaintiff believed CRYO-CELL INTERNATIONAL, INC.  had no other choice but to honor the Viacord coupon, but Mr. Portnoy raised his voice and angrily responded: "No," after which Mr. Portnoy instructed BYER to call Viacoard again and to "prove it" to the client because Mr. Portnoy "was not letting the sale go."

39.     On July 16, 2021, BYER underwent a uterine fibroid ablation procedure in connection with Plaintiff's anemia.

40.     On July 29, 2021, BYER underwent cervical surgery in connection with Plaintiff's serious neck/back injuries and neurological conditions.

## EXHAUSTION OF ADMINISTRATVIE REMEDIES

41.     On March 30, 2022, BYER dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) and Florida Commission for Human Relations (FCHR) Charge No. 511-2022-01572 alleging that she had been subjected to disability/handicap discrimination and retaliation in violation of the Americans with Disabilities Act and the Florida Civil Rights Act.  A copy of BYER's Charge of Discrimination is attached hereto as Exhibit A.

42.     On July 19, 2022, the EEOC issued a Dismissal and Notice of Suit Rights to BYER in connection with Charge No. 511-2022-01572, which Notice was received by BYER on July 20, 2022 and a copy of which Notice is attached hereto as Exhibit B.

43.     As of October 6, 2022, more than One Hundred and Eighty (180) days have passed since the filing of BYER's Charge of Discrimination on March 30, 2022 and the FCHR did not issue any determination concerning BYER's Charge.  As a result, pursuant to F.S. §760.11(18), which provides that in the event that the FCHR fails to conciliate or determine whether there is reasonable cause on any complaint under that section within 180 days of the filing of the complaint, an aggrieved person may file a civil action "as if the commission determined that there was reasonable cause," BYER has exhausted all administrative remedies under Florida as well as Federal law.

44.     BYER's Complaint is being filed with the Court on October 6, 2022 within Ninety (90) days of BYER's receipt on July 20, 2022 of the EEOC's Dismissal and Notice of Suit Rights for Charge No. 511-2022-01572.

45.     All conditions precedent to the institution of this action have either occurred or been waived.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

Plaintiff, LISA BYER, reasserts and reaffirms the allegations of Paragraphs 1 through 45 as if fully set forth herein and further states that this is an action against CRYO-CELL INTERNATIONAL, INC., for disparate treatment and disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553. ("ADAAA").

46.     The Americans with Disabilities, the ADA and ADAAA, 42 U.S.C. §12112(a), prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

47.     At all times material to this action including but not necessarily limited to between approximately May 2020 and June 2021, BYER suffered from one or more neurological conditions and a hemic disorder, namely: (a)  cervical problems as a result of serious neck/back injuries; and (b) anemia, a blood disorder that caused BYER to lack enough healthy red blood cells to carry adequate oxygen to her body's tissues.

48.     At all times material to this action, BYER suffered from one or more  "physical impairments" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(h)(1), as a result of (i) one or more neurological conditions which affected the functioning of BYER's neck, back, hands, and fingers; and (b) anemia, a blood disorder that caused BYER to lack enough healthy red blood cells to carry adequate oxygen to her body's tissues.

49.     At all times material to this action, BYER was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R.  §1630.2(i)(ii), including but not necessarily limited to the operation of a major bodily function including BYER's hemic and musculoskeletal functions.

50.     Similarly, at all times material to this action, BYER was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i), including but not necessarily limited to: performing manual tasks; walking; standing; sitting; reaching; lifting; and bending.

51.     At all times material to this action, BYER was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. §12102(1), because Plaintiff (a) suffered physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by CRYO-CELL INTERNATIONAL, INC. as a person with such impairments.

52.     At all times material to this action, BYER had to endure substantial limitations as a result of Plaintiff's neurological conditions, hemic disorder, and related medical condition(s) within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(j), because BYER's medical condition(s) substantially limited Plaintiff's ability to perform one or more major life activities—including but not necessarily limited BYER's hemic and musculoskeletal functions—as compared to most people in the general population.

53.     At all times material to this action, BYER was "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(A), because BYER's neurological conditions, hemic disorder, and related medical condition(s) constitute one or more actual physical impairments that substantially limited one or more of BYER's major life activities.

54.     In addition, at all times material to this action, BYER was also "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(C), because BYER was regarded by CRYO-CELL INTERNATIONAL, INC. as having one or more physical impairments that substantially limited one or more of her major life activities as a result of BYER's Ulcerative Colitis and related medical condition(s).

55.     At all times material to this action, BYER was a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of her job for CRYO-CELL INTERNATIONAL, INC. between approximately May 2020 and June 2021 with or without reasonable accommodation by Defendant.

56.     At all times material to this action, BYER was a "qualified individual with a disability" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(m) and 42 U.S.C. §12111(8), because BYER possessed the requisite skill and experience to carry out her essential

duties for CRYO-CELL INTERNATIONAL, INC. between approximately May 2020 and June 2021, and BYER likewise was capable of performing the essential functions of her job between even between Approximately May 2020 and June 2021 despite BYER's disability, with or without reasonable accommodation(s) by CRYO-CELL INTERNATIONAL, INC.

57.     Further, BYER was also qualified for her job with CRYO-CELL INTERNATIONAL, INC. within the meaning of the ADA and ADAAA, 42 U.S.C. §12111(8) & (9), even in the face of the impact of BYER's neurological conditions, hemic disorder, and related medical condition(s) because CRYO-CELL INTERNATIONAL, INC. could have and should have provided BYER with reasonable accommodation(s).

58.     Between approximately May 2020 and June 2021, CRYO-CELL INTERNATIONAL, INC. subjected BYER to disparate treatment and discrimination in violation of 42 U.S.C. §12112 which was motivated by BYER's disability and Defendant discriminated against BYER because of her disability in violation of 42 U.S.C. §12112, including but not limited to: (a) CRYO-CELL failing to provide a reasonable accommodation for Plaintiff's disability; and (b) CRYO-CELL terminating BYER's employment in June 2021 based upon false and/or pretextual grounds because of Plaintiff's actual or perceived disability.

59.     CRYO-CELL INTERNATIONAL, INC. terminated BYER's employment in June 2021 because of BYER's actual and/or perceived disability, in violation of 42 U.S.C. §12112(a).

60.     The reasons proffered by CRYO-CELL INTERNATIONAL, INC. in June 2021 for terminating BYER's employment were false and a pretext for discrimination against BYER because of her disability in violation of 42 U.S.C. §12112(a).

61.     CRYO-CELL INTERNATIONAL, INC. knowingly and willfully engaged in conduct prohibited by the ADA and ADAAA against BYER because of her disability so as to discourage, dissuade and/or otherwise dishearten BYER.

62.     BYER's actual and/or perceived disability was a motivating factor in CRYO-CELL INTERNATIONAL, INC.'s decision to terminate BYER's employment in June 2021, in violation of 42 U.S.C. §12112.

63.     CRYO-CELL INTERNATIONAL, INC.'s violations of the ADA and ADAAA were intentional and were done with malice or reckless indifference to BYER's rights guaranteed under the laws of the United States.

64.     BYER has suffered lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of CRYO-CELL INTERNATIONAL, INC.'s violations of the ADA and ADAAA.

65.     BYER has retained the undersigned counsel to represent her in this action and pursuant to 42 U.S.C. §12205, BYER is entitled to recover her reasonable attorneys' fees and costs from CRYO-CELL INTERNATIONAL, INC.

WHEREFORE, Plaintiff, LISA BYER, demands judgment against Defendant, CRYO-CELL INTERNATIONAL, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

<u>**COUNT II**</u>
<u>**RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**</u>

Plaintiff, LISA BYER, reasserts and reaffirms the allegations of Paragraphs 1 through 45 as if fully set forth herein and further states that this is an action against CRYO-CELL

INTERNATIONAL, INC., for Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §12203, as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553.

66.     The Americans with Disabilities, ADA and ADAAA, 42 U.S.C. §12203(a), provides that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter."

67.     Similarly, the ADA and ADAAA also provide, 42 U.S.C. §12203(b), that it shall "be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or an account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

68.     At all times material to this action, BYER was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. § 12102(1), because Plaintiff (a) suffered one or more physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by CRYO-CELL INTERNATIONAL, INC. as a person with such impairments.

69.     BYER was at all times material to this action a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of her job for CRYO-CELL INTERNATIONAL, INC. between approximately May 2020 and June 2021 with or without reasonable accommodation.

70.     BYER engaged in statutorily protected activity under the ADA and ADAAA on multiple occasions between approximately May 2020 and June 2021 by, *inter alia*, BYER exercising or attempting to exercise or enjoy her rights under the ADA, including but not limited to: (a) BYER seeking and obtaining medical treatment for her neurological conditions, hemic disorder, and related medical condition(s); and (b) BYER requesting on multiple occasions between April 2021 and May 2021 to take time off from her employment with CRYO-CELL INTERNATIONAL, INC. in July 2021 to have vital surgeries for her disability.

71.     CRYO-CELL INTERNATIONAL, INC. subjected BYER to adverse employment actions including but not necessarily limited to Defendant terminating Plaintiff's employment in June 2021 based upon discriminatory and/or pretextual grounds because of Plaintiff's disability and Plaintiff seeking medical treatment and time off for her disability, all because BYER engaged in statutorily protected activity under the ADA and ADAAA.

72.     CRYO-CELL INTERNATIONAL, INC.'s retaliatory actions against BYER constitute violations of the ADA and ADAAA, which prohibits employers from discriminating against an individual because he or she has opposed any act or practice made unlawful under the ADA/ADAAA, 42 U.S.C. §12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADA/ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. §12203(b).

73.     CRYO-CELL INTERNATIONAL, INC.'s termination of BYER's employment in June 2021 was unlawful retaliation in violation of 42 U.S.C. §12203 because of Plaintiff exercising her right to seek and obtain medical treatment for her disability, in violation of the ADA.

74.     The fact that BYER engaged in activity protected by the ADA was a motivating factor in CRYO-CELL INTERNATIONAL, INC.'s termination of Plaintiff's employment in June 2021, in violation of 42 U.S.C. §12203.

75.     The reasons proffered by CRYO-CELL INTERNATIONAL, INC. in June 2021 for terminating BYER's employment were a pretext for unlawful retaliation against BYER in violation of 42 U.S.C. §12203.

76.     As a direct and proximate result of CRYO-CELL INTERNATIONAL, INC.'s unlawful retaliation against BYER in violation of the ADA, Plaintiff has suffered damages and has been deprived of job-related economic benefits, all in amounts to be established at trial.

77.     CRYO-CELL INTERNATIONAL, INC.'s actions have caused BYER to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

78.     CRYO-CELL INTERNATIONAL, INC.'s actions were undertaken intentionally, willfully, and maliciously with respect to, or with malice and/or reckless disregard for, BYER's federally protected rights under the ADA, as a result of which Plaintiff is entitled to punitive damages from Defendant.

79.     Pursuant to 42 U.S.C. §12205, BYER is entitled to recover her reasonable attorneys' fees and costs from CRYO-CELL INTERNATIONAL, INC. as a result of Defendant's violations of the ADA's anti-retaliation provisions.

WHEREFORE, Plaintiff, LISA BYER, demands judgment against Defendant, CRYO-CELL INTERNATIONAL, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief

including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT III
## VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT,
## F.S. §760.10  - DISCRIMINATION BASED ON HANDICAP

Plaintiff, LISA BYER, reasserts and reaffirms the allegations set forth in paragraphs 1 through 45 above and further states that this is an action against CRYO-CELL INTERNATIONAL, INC., for handicap discrimination in violation of the Florida Civil Rights Act, F.S. §760.10 *et seq.*

80.    Florida Statutes §760.10(1)(a) provides that: "It is unlawful employment practice for an employer:  To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, **handicap**, or marital status." Id. (emphasis added).

81.    At all times material to this action, BYER  was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

82.    CRYO-CELL INTERNATIONAL, INC. knowingly and willfully discriminated against BYER because of Plaintiff's handicap(s) on one or more occasions between approximately May 2020 and June 2021 culminating in Defendant unlawfully terminating Plaintiff's employment in June 2021 because of BYER's handicap(s), in violation of F.S. §760.10(1).

83.    Furthermore, despite the facts that BYER satisfactorily performed her essential duties CRYO-CELL INTERNATIONAL, INC. and that Plaintiff was still qualified to carry her out essential job duties in June 2021, Defendant unlawfully terminated BYER in June 2021 because of Plaintiff's handicap(s), in violation of F.S. §760.10(1).

84.     At all times material to this action, BYER suffered from a chronic and/or permanent medical conditions as a result of her neurological conditions, hemic disorder, and related medical condition(s), which conditions constitute an actual or perceived "handicap" within the meaning of the FCRA, as BYER's condition was chronic and involved physical problems including but not necessarily limited to the functioning of BYER's neck, back, hands, fingers, musculoskeletal, neurological, and hemic functions.

85.     At all times material to this action, BYER was a qualified individual with a handicap within the meaning of the FCRA because BYER possessed the requisite skill and experience to carry out her duties for CRYO-CELL INTERNATIONAL, INC. and BYER likewise was capable of performing the essential functions of her job despite Plaintiff's handicap(s), with or without reasonable accommodation(s) by CRYO-CELL INTERNATIONAL, INC.

86.     Further, at all times material to this action, BYER was also qualified for her job with CRYO-CELL INTERNATIONAL, INC. within the meaning of the FCRA even in the face of the impact of BYER's handicap(s) because CRYO-CELL INTERNATIONAL, INC. could and should have provided BYER with reasonable accommodation(s).

87.     Between approximately May 2020 and June 2021, CRYO-CELL INTERNATIONAL, INC. subjected BYER to disparate treatment and discrimination which was motivated by and was because of BYER's handicap(s), in violation of F.S. §760.10(1)(a), by *inter alia*: (a) CRYO-CELL failing to provide a reasonable accommodation for Plaintiff's handicap(s); and (b) CRYO-CELL terminating BYER's employment in June 2021 based upon false and/or pretextual grounds because of Plaintiff's actual or perceived handicap(s).

88.     CRYO-CELL INTERNATIONAL, INC. knowingly and willfully engaged in conduct prohibited by the Florida Civil Rights Act against BYER because of Plaintiff's handicap(s) so as to discourage, dissuade and/or otherwise dishearten BYER.

89.     When CRYO-CELL INTERNATIONAL, INC. terminated BYER's employment in June 2021, a motivating factor behind Defendant's termination of Plaintiff's employment was BYER's handicap(s), in violation of F.S. §760.10(1)(a) & (b).

90.     The reasons proffered by CRYO-CELL INTERNATIONAL, INC. in June 2021 for terminating BYER's employment were false and a pretext for discrimination against BYER because of her handicap(s) in violation of F.S. §760.10(1).

91.     CRYO-CELL INTERNATIONAL, INC.'s violations of BYER's rights under F.S. §760.10 were intentional and were done with malice and reckless disregard for BYER's rights as guaranteed under the laws of the State of Florida, such that BYER is entitled to punitive damages from CRYO-CELL INTERNATIONAL, INC. pursuant to F.S. §760.11(5).

92.     Pursuant to F.S. §760.11(5), BYER is entitled to recover her reasonable attorneys' fees and costs from CRYO-CELL INTERNATIONAL, INC. as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, LISA BYER demands judgment against Defendant, CRYO-CELL INTERNATIONAL, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT IV
## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10

Plaintiff, LISA BYER, reasserts and reaffirms the allegations set forth in paragraphs 1 through 45 above and further states that this is an action against CRYO-CELL INTERNATIONAL, INC., for Retaliation in violation of the Florida Civil Rights Act, F.S. §760.10.

93.     Pursuant to the Florida Civil Rights Act (FCRA), F.S. §760.10(7), it is "an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

94.     At all times material to this action, BYER  was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

95.     BYER engaged in statutorily protected activity under the Florida Civil Rights Act on multiple occasions between approximately May 2020 and June 2021 by, *inter alia*, BYER exercising or attempting to exercise or enjoy her rights under the ADA, including but not limited to: (a) BYER seeking and obtaining medical treatment for her neurological conditions, hemic disorder, and related medical condition(s); and (b) BYER requesting on multiple occasions between April 2021 and May 2021 to take time off from her employment with CRYO-CELL INTERNATIONAL, INC. in July 2021 to have vital surgeries for her handicap(s).

96.     CRYO-CELL INTERNATIONAL, INC. subjected BYER to adverse employment actions including but not necessarily limited to Defendant terminating Plaintiff's employment in June 2021 based upon discriminatory and/or pretextual grounds because of Plaintiff's handicap(s)

and Plaintiff seeking medical treatment and time off for her perceived handicap(s), all in violation of F.S. §760.10(7).

97.    CRYO-CELL INTERNATIONAL, INC.'s termination of BYER's employment in June 2021 was unlawful retaliation in violation of 42 U.S.C. §12203 because of Plaintiff exercising her right to seek and obtain medical treatment for her handicap(s), in violation of F.S. §760.10(7).

98.    The fact that BYER engaged in activity protected by the FCRA was a motivating factor in CRYO-CELL INTERNATIONAL, INC.'s termination of Plaintiff's employment in June 2021, in violation of F.S. §760.10(7).

99.    The reasons proffered by CRYO-CELL INTERNATIONAL, INC. in June 2021 for terminating BYER's employment were a pretext for unlawful retaliation against BYER in violation of F.S. §760.10(7).

100.    CRYO-CELL INTERNATIONAL, INC.'s violations of BYER's rights under F.S. §760.10 were intentional and were done with malice and reckless disregard for BYER's rights as guaranteed under the laws of the State of Florida, such that BYER is entitled to punitive damages from CRYO-CELL INTERNATIONAL, INC. pursuant to F.S. §760.11(5).

101.    BYER has suffered lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of CRYO-CELL INTERNATIONAL, INC.'s violations of F.S. §760.10(7).

102.    Pursuant to F.S. §760.11(5), BYER is entitled to recover her reasonable attorneys' fees and costs from CRYO-CELL INTERNATIONAL, INC. as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, LISA BYER, demands judgment against Defendant, CRYO-CELL INTERNATIONAL, INC., for back pay, employment benefits, other compensation

including commissions and bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorney's fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

### COUNT V
### INTERFERENCE IN VIOLATION OF THE FAMILY AND  MEDICAL LEAVE ACT

Plaintiff, LISA BYER, reasserts and reaffirms the allegations of Paragraphs 1 through 45 and further states that this is an action against CRYO-CELL INTERNATIONAL, INC. for Interference in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

103.    The FMLA, 29 U.S.C. §2615(a)(1), provides that it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under 29 U.S.C. §2611, *et seq*.

104.    Under the FMLA, when the timing of an employee's need for FMLA leave is not foreseeable, an employee is only required provide notice to her employer "as soon as practicable under the facts and circumstances of the particular case."  29 CFR §825.303(a).

105.    Similarly, where an emergency condition requires leave because of an FMLA-qualifying reason, written advance notice pursuant to an employer's standard rules and procedures is not required when medical leave is involved.  29 CFR §825.303(c).

106.    On multiple occasions during the FMLA's three (3) year statute of limitations period between approximately April 2021 and June 2021, BYER provided Defendant, CRYO-CELL INTERNATIONAL, INC., with sufficient facts and notice of Plaintiff's need for medical leave due to Plaintiff's serious health condition(s), namely her neurological conditions and hemic disorder for which she informed Defendant she would (a) be undergoing multiple surgeries in July 2021; and (b) need to take medical leave from her employment for as long as three (3) months.

107.    On multiple occasions during the FMLA's three (3) year statute of limitations period between approximately April 2021 and June 2021, BYER exercised, and/or attempted to exercise, rights guaranteed under and protected by the FMLA, 29 U.S.C. §§2612(a)(1)(D), while in the course of her employment with Defendant, CRYO-CELL INTERNATIONAL, INC.

108.    BYER's neurological conditions, hemic disorder, and  related medical conditions constitute one or more "serious health conditions" within the meaning of the FMLA, 29 U.S.C. §2612(a)(1)(D).

109.    By exercising and/or attempting to exercise BYER's rights under the FMLA on multiple occasions during the FMLA's three (3) year statute of limitations period between approximately April 2021 and June 2021 during the course of Plaintiff's employment with CRYO-CELL INTERNATIONAL, INC., including but not necessarily limited to BYER's right to medical leave under the FMLA from her employment with Defendant, BYER engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq*., triggering the protections of the FMLA, specifically including but not limited to BYER's rights pursuant to:  (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave on an intermittent or other basis in 2021 because of a "serious health condition"; and (b) 29 U.S.C. §2614 to be restored to her position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon her return from leave after July 2021.

110.    On multiple occasions during the FMLA's three (3) year statute of limitations period between approximately April 2021 and June 2021, Defendant, CRYO-CELL INTERNATIONAL, INC., repeatedly interfered with BYER's right to take medical leave under the FMLA for one or more serious health conditions when Defendant had knowledge of BYER's

exercise and/or attempted exercise of rights guaranteed under and protected by the FMLA, in violation of 29 U.S.C. 2615(a)(1).

111.    Moreover, Defendant, CRYO-CELL INTERNATIONAL, INC., disregarded its obligations as an employer under the FMLA by, *inter alia*, failing to inform BYER that her medically-related absences for surgeries in July 2021 were for an FMLA-qualifying reason, in violation of 29 C.F.R. §825.300(b), which regulation requires that when an employee requests FMLA leave, or when an employer acquires knowledge that an employee's leave may be for an FMLA qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five (5) business days, including providing the employee with a formal notice indicating, *inter alia*, whether the employee is eligible for FMLA leave as defined by the law.

112.    In June 2021, Defendant, CRYO-CELL INTERNATIONAL, INC., interfered with BYER's rights under the FMLA when Defendant unlawfully terminated BYER's employment in violation of 29 U.S.C. §2612(a)(1)(D) for reasons which were discriminatory and pretextual and at a point when BYER had not exhausted twelve (12) workweeks of medical leave during the year 2021 which BYER was entitled to under the FMLA because of her "serious health condition(s)."

113.    Defendant, CRYO-CELL INTERNATIONAL, INC.'s, violations of BYER's rights under the FMLA were willful, intentional, and not done in good faith.

114.    As a result of CRYO-CELL INTERNATIONAL, INC.'s violations of BYER's rights protected by the FMLA, BYER has suffered damages including but not necessarily limited to unpaid wages, lost wages, and other employment benefits.

115.    Pursuant to 29 U.S.C. §2617(a)(1)(iii), BYER is entitled to an award of liquidated damages from Defendant, CRYO-CELL INTERNATIONAL, INC., equal to the sum of the

amount of all salary, commissions, wages, bonuses, employment benefits, and other compensation denied to or lost by BYER by reason of CRYO-CELL INTERNATIONAL, INC.'s violations of 29 U.S.C. §2615(a)(1).

116.     Pursuant to 29 U.S.C. §2617(a)(3), BYER is entitled to recover from Defendant, CRYO-CELL INTERNATIONAL, INC., all reasonable attorneys' fees, reasonable expert witness fees, and other costs incurred as a result of Defendant's violations of the FMLA.

WHEREFORE, Plaintiff, LISA BYER, demands judgment against Defendant, CRYO-CELL INTERNATIONAL, INC., for back pay, employment benefits, other compensation including commissions and bonuses, liquidated damages, equitable relief including but not limited to front pay, interest, attorneys' fees, costs, and such other and further relief as this Honorable Court deems proper.

## COUNT VI
## RETALIATION IN VIOLATION OF THE FAMILY AND  MEDICAL LEAVE ACT

Plaintiff, LISA BYER, reasserts and reaffirms the allegations of Paragraphs 1 through 45 and further states that this is an action against CRYO-CELL INTERNATIONAL, INC. for Retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

117.     The FMLA, 29 U.S.C. §2601 *et seq.*, prohibits an employer from retaliating against an eligible employee who has (a) obtained and/or attempted to obtain the benefits and protections of the FMLA; or (b) otherwise triggered the protections of, or engaged in activity protected by, the FMLA.

118.     In addition, the FMLA, 29 U.S.C. §2615, prohibits an employer from discharging or in any other manner discriminating against any individual for opposing any practice made unlawful by the Act.

119.    On multiple occasions during the FMLA's three (3) year statute of limitations period between approximately April 2021 and June 2021, BYER exercised, and/or attempted to exercise, her rights under the FMLA in accordance with 29 U.S.C. §§2612(a)(1)(C), in connection with Plaintiff's serious health conditions, namely her neurological conditions and hemic disorder.

120.    By exercising and/or attempting to exercise her rights under the FMLA on multiple occasions during the FMLA's three (3) year statute of limitations period between approximately April 2021 and June 2021 during her employment with Defendant, CRYO-CELL INTERNATIONAL, INC., including but not necessarily limited to BYER's right to medical leave under the FMLA, BYER engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq*., triggering the protections of the FMLA, specifically including but not limited to BYER's rights pursuant to:  (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave on an intermittent or other basis in 2021 because of a "serious health condition"; and (b) 29 U.S.C. §2614 to be restored to her position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon her return from leave after July 2021.

121.    Multiple members of management of Defendant, CRYO-CELL INTERNATIONAL, INC.—including but not necessarily limited to Oscar Vergara, Melissa Warrene, Belinda Perry, and Mark Portnoy—received notice about and had knowledge between approximately April 2021 and June 2021 of BYER's "serious health condition(s)" under the FMLA.

122.    Defendant, CRYO-CELL INTERNATIONAL, INC., was fully aware and/or should have been aware between approximately April 2021 and June 2021 of Defendant's legal obligations as an employer to BYER as an employee covered by the FMLA.

123.    At all times material to this action, BYER satisfactorily performed her essential job duties for CRYO-CELL INTERNATIONAL, INC.

124.    In June 2021, Defendant, CRYO-CELL INTERNATIONAL, INC., retaliated against BYER and unlawfully terminated Plaintiff's employment in violation of 29 U.S.C. §2615(a)(1) when Defendant fired BYER for one or more reasons which were false and/or pretextual and instead was actually because of Plaintiff's need for FMLA leave and/or her exercise of her right to medical leave under the FMLA.

125.    A motivating factor behind Defendant, CRYO-CELL INTERNATIONAL, INC.'s, decision to terminate BYER's employment in June 2021 was retaliation against BYER because Plaintiff:  (a) needed and sought time off from work on one or more days on multiple occasions between approximately April 2021 and June 2021  for surgeries in July 2021 for FMLA-qualifying reasons; and (b) Defendant's knowledge that BYER sought and/or triggered the protections of the FMLA, including the benefits and protections associated with leave and job reinstatement guaranteed by the FMLA, all in violation of 29 U.S.C. §2615(a)(1).

126.    The reasons proffered by Defendant, CRYO-CELL INTERNATIONAL, INC., in June 2021 for terminating BYER's employment were false and were known to be false by Defendant at the time of BYER's termination and instead was a pretext for Defendant's intentional violations of BYER's rights under the FMLA.

127.    By subjecting BYER to retaliation and terminating BYER's employment in June 2021 because Plaintiff exercised and/or attempted to exercise her rights under the FMLA, as guaranteed by, *inter alia*, 29 U.S.C. §2612(a)(1)(C), Defendant intentionally retaliated against BYER in violation of the FMLA.

128.     Defendant, CRYO-CELL INTERNATIONAL, INC.'s, violations of BYER's rights under the FMLA were willful, intentional and not done in good faith.

129.     As a result of Defendant, CRYO-CELL INTERNATIONAL, INC.'s, violations of BYER's rights protected by the FMLA, Plaintiff has suffered damages including but not necessarily limited to unpaid wages and lost employment benefits.

130.     Pursuant to 29 U.S.C. §2617(a)(1)(iii), BYER is entitled to an award of liquidated damages from Defendant, CRYO-CELL INTERNATIONAL, INC., equal to the sum of the amount of all wages, employment benefits, and other compensation denied to or lost by Plaintiff by reason of Defendant's violations of 29 U.S.C. §2615(a)(1).

131.     Pursuant to 29 U.S.C. §2617(a)(3), BYER is entitled to recover from Defendant, CRYO-CELL INTERNATIONAL, INC., all reasonable attorneys' fees, expert witness fees, and other costs as a result of Defendant's violations of the FMLA.

WHEREFORE, Plaintiff, LISA BYER, demands judgment against Defendant, CRYO-CELL INTERNATIONAL, INC., for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, liquidated damages, equitable relief including but not limited to reinstatement and/or front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

LISA BYER demands trial by jury on all issues so triable.

Dated:  October 6, 2022                    Respectfully submitted,


By:    **<u>KEITH M. STERN</u>**
       Keith M. Stern, Esquire
       Florida Bar No. 321000
       E-mail:  employlaw@keithstern.com
       LAW OFFICE OF KEITH M. STERN, P.A.
       80 S.W. 8th Street, Suite 2000
       Miami, Florida 33130
       Telephone:  (305) 901-1379
       Fax:  (561) 288-9031
       Attorneys for Plaintiff

# EXHIBIT A

EEOC Form 5 (11/09)

| # CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 511-2022-01572 |

|  |  | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Lisa Byer | ████ | ██/1972 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| ████ | Palm Coast, Florida 32164 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No Employees, Members | Phone No (Incl Area Code) |
|---|---|---|
| Cryo-Cell International, Inc. | 15+ | (813) 749-2177 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 700 Brooker Creek Boulevard, Suite 1800 | Oldsmar, Florida  34677 | |

| Name | No Employees, Members | Phone No (Incl Area Code) |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code | |
|---|---|---|
|  |  |  |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest        Latest: Jun 9, 2021<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

In February 2015, I began working for Respondent after I was recruited for a Sales Training position. After approximately one year, Respondent moved me into a sales position as well because the company reportedly no longer needed solely a Sales Trainer.

Between approximately 2016 and 2021, I satisfactorily performed my duties as a Client Coordinator & Sales Trainer for Respondent, with primary duties which consisted of: contacting and educating parents on the options of cord blood and tissue banking to ensure they can make educated choices; analyzing the processes, workflows, and providing detailed analysis on departmental process improvements; train and retraining all sales team members as software changes occurred; and maintaining training materials to fit with changes in Respondent's business processes & software changes. In this regard, when I performed training duties, Respondent paid me for sales made while with the trainee as well as a salary plus commissions based on the number of sales made each month.

In approximately January 2018, I first sought Family and Medical Leave Act (FMLA) leave from Respondent because my husband needed a heart transplant and he was in the transplant program at Mayo Clinic. Similarly, between approximately May 2020 and May 2021, I received ongoing medical treatment for serious neck and back injuries after I I fell down the stairs. In this regard, in May 2021 I notified Respondent's Human Resources Manager, Belinda Perry, and my immediate supervisor, Oscar Vergara, Respondent's Associate Director of Global Sales, that I was starting to lose feeling in my fingers and that after further evaluation by my doctor, I needed to undergo Cervical surgery. However, I initially received no response from Respondent about my need for time off for surgery, so after I followed up again, Ms. Perry responded and informed me to simply notify the company when I received the date of my surgery.

In early June 2021, I informed Mr. Vergara over the telephone on June 3, 2021 about the dates of my surgery and the time off I needed for medical leave. Similarly, on June 8, 2021, I e-mailed Respondent about my surgery and need for medical leave, including Respondent's Manager, Melissa Warren, as well as Ms. Perry and Mr. Vergara. However, on June 9, 2021, I received a call from Ms. Perry and Mr. Vergara notifying me that Respondent was terminating my employment because Respondent received a complaint from a client.

I believe Respondent subjected me to disparate treatment and discrimination because of an actual or perceived disability and retaliated against me culminating in the unlawful termination of my employment because I exercised my rights and complained about disability discrimination, all in violation the Americans with Disabilities Act and Florida Civil Rights Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
|  | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| 03/29/2022          *[signature]*<br>Date        *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# EEOC Charge Byer Lisa FINAL for Execution

**Final Audit Report**                                                    2022-03-29

| | |
|---|---|
| Created: | 2022-03-29 |
| By: | Keith Stern (employlaw@keithstern.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA7X6yd78iPeO1RKKo4y6cc1jj0rUW4GN6 |

## "EEOC Charge Byer Lisa FINAL for Execution" History

📄 Document created by Keith Stern (employlaw@keithstern.com)
2022-03-29 - 3:39:40 PM GMT- IP address: 76.108.235.148

📧 Document emailed to Lisa Byer (reybcl@gmail.com) for signature
2022-03-29 - 3:44:38 PM GMT

📄 Email viewed by Lisa Byer (reybcl@gmail.com)
2022-03-29 - 5:56:08 PM GMT- IP address: 66.249.83.57

✍️ Document e-signed by Lisa Byer (reybcl@gmail.com)
Signature Date: 2022-03-29 - 5:58:35 PM GMT - Time Source: server- IP address: 107.145.34.109

✅ Agreement completed.
2022-03-29 - 5:58:35 PM GMT

**Adobe Sign**

# EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Tampa Field Office**
501 East Polk St, Suite 1000
Tampa, FL 33602
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 07/12/2022

**To:** Lisa Byer
████████████
Palm Coast, FL 32164

Charge No: 511-2022-01572

EEOC Representative and email:     STANLEY MOFFETT
Federal Investigator
stanley.moffett@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 511-2022-01572.

On behalf of the Commission,

*Evangeline Hawthorne*        Digitally signed by Evangeline
Hawthorne
Date: 2022.07.19 11:50:51 -04'00'

Evangeline Hawthorne
Tampa Field Office Director

**Cc:**

McGuinness & Cicero
Jeffrey M. Goodz, Esq.
1000 Sawgrass Corporate Pkwy.
Suite 590
Sunrise, Florida 33323

jeffrey.goodz@mc-atty.com


Law Office of Keith M. Stern, P.A.
Attn: Keith M. Stern, Esq.
80 S.W. 8th Street
Suite 2000
Miami, Florida 33130

kms@workingforyou.com


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 511-2022-01572 to the District Director at Roberto Chavez, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

Enclosure with EEOC Notice of Closure and Rights (01/22)

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.